## MERCANTILE-COMMERCE BANK & TRUST CO. v. HOWE.

### No. 11690.

Circuit Court of Appeals, Eighth Circuit.

Aug. 26, 1940.

894

R. B. McCulloch, of Forrest City, Ark., for appellant.

J. G. Burke and G. D. Walker, both of Helena, Ark. (John I. Moore, Jr., of Helena, Ark., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

BELL, District Judge.

This is an action brought by appellant as plaintiff against W. H. Howe, individually, and as trustee of the Presbyterian Church of Helena, Arkansas, the appellee, as defendant, to foreclose a mortgage, a deed of trust in form, on the property of the church and to obtain a deficiency judgment against Howe personally. On the death of Howe, subsequent to the trial of the case, Eva M. Howe, administratrix of the estate of W. H. Howe, deceased, was substituted as appellee.

The church is an unincorporated religious association of which S. C. Moore, S. A. Wooten, G. L. Davidson and W. H. Howe were the trustees. The trustees on behalf of the church negotiated a loan of $43,000 from the Mercantile Trust Company, now the Mercantile-Commerce Bank & Trust Company, appellant, to pay certain indebtedness and bills incurred in the construction of a church edifice.

At a meeting of the adult members duly held on March 29, 1925, a resolution was adopted authorizing and directing the trustees to execute and deliver to appellant certain notes for and on behalf of the church and to execute and deliver a first deed of trust in the nature of a mortgage conveying the church property to the plaintiff as security for the loan.

Pursuant to the negotiations for the loan and the resolution, eighty-six promissory notes for $500 each due serially from April 1, 1926, to April 1, 1940, and a deed of trust were executed April 1, 1925, and signed by the four persons named as trustees of the church. Notes maturing on and prior to April 1, 1933, aggregating $19,000 were paid. Notes maturing April 1, 1934, to April 1, 1938, inclusive, aggregating $10,000 were not paid, whereupon the entire unpaid balance of $24,000 plus accumulated interest was accelerated and declared due in accordance with the provisions of the deed of trust.

This suit was commenced on September 24, 1938, at which time W. H. Howe was the only surviving member of the Board of Trustees of the church. Neither he nor the church made any defense to the suit for foreclosure, and a decree therefor was duly entered. Howe, as an individual, presented a motion to dismiss the case insofar as it sought to hold him personally liable on the grounds that the complaint, as amended, did not allege facts sufficient to constitute a cause of action, and that the cause of action alleged was barred by the statute of frauds. The motion was sustained and, from an order dismissing the case as to him individually, this appeal is taken.

The question is whether a trustee of an unincorporated religious association becomes personally liable on a note and mortgage signed by him as such trustee with authority to act.

Section 20 of the Uniform Negotiable Instruments Law, Section 10178, Pope's Digest of the Statutes of Arkansas, provides: "Where the instrument contains or a person adds to his signature words indicating that he signs for or in behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

The appellee contends that the trustee signed the instrument in his representative capacity with full authority to do so and that under the statute he incurred no personal liability. The appellant contends that the Presbyterian Church had no capacity to authorize the execution of the instruments and that the statute therefore does not apply.

The notes and deed of trust show conclusively that the trustees signed in their representative capacity. The deed of trust recited:

"This indenture, made and entered into this first day of April, A. D. 1925, by and between S. C. Moore, S. A. Wooten, G. L. Davidson and W. H. Howe as trustees of the Presbyterian Church, Helena, Arkansas, a non-incorporated religious body * * * called the grantors * * * convey (the property described) * *."

"The authority for the creation of the debt hereby secured and the execution of this deed of trust was duly conferred by a meeting of the members of said church, held on the 29th day of March, A. D. 1925 * * *."

"* * * grantors hereby covenant and agree that at the delivery hereof they are, as such trustees, the lawful owners of the premises conveyed * * *."

"* * * the word grantors shall be held and construed to mean and include (again naming the four trustees), as trustees of the Presbyterian Church of Helena, Arkansas, and the lawful successors and assigns of the grantors, being owners for the time being of the premises hereby conveyed."

In describing the notes to be executed, the deed of trust provided that they should be signed by "* * * the said church trustees, as trustees * * *." The notes, likewise the deed of trust, were so signed and the notes recited that the four parties named "as trustees of the Presbyterian Church of Helena, Arkansas, * * * acknowledge themselves, as such trustees to be indebted * * *."

The deed of trust provided for giving notice of default "to the trustees of the Presbyterian Church, Porter and Columbia Streets, Helena, Arkansas." There was no provision for a notice to the trustees or their successors individually. Moreover, it is significant that there is not an express provision in the notes or deed of trust that the trustees shall be liable for the debt, jointly, severally, individually, or in any manner except as trustees of the church.

The trustees were clothed with full authority to sign the instruments in their representative capacity if it were possible for an unincorporated religious association to confer such authority. The resolution adopted by the adult members of the church recited the fact that appellant had agreed to make the loan and the terms and conditions thereof, and expressly authorized and directed the trustees to execute and deliver to appellant the notes for and on behalf of the church, to execute and deliver a first deed of trust conveying the church property to appellant as security for the loan, to perform any other acts and things necessary to fully consummate the loan, and to apply the proceeds of the loan to the payment of the indebtedness of the church and the bills incurred in the erection of the church edifice.

The capacity of the church to authorize the trustees to execute the notes and deed of trust should be considered in the light of the Arkansas Statutes. Pope's Digest of the Statutes of Arkansas, Section 11368 [1] authorizes a religious society to

---

[1] "§ 11368. Trustees to hold in succession. All lands and tenements, not exceeding forty acres, that have been or hereafter may be conveyed by purchase to any person or persons as trustee or trustees in trust for the use of any religious society within this State, either for a meeting-house, burying-ground, camp-ground or residence for their preacher, shall descend, with the im-

hold realty in the name of duly elected or appointed trustees; section 11369 [2] authorizes the trustees of a religious society to prosecute and defend suits for the protection of its property; section 8874 [3] authorizes the trustees of a religious organization on making a contract for improvements or construction of any building involving more than $100 to require the contractor to furnish a bond to pay all bills for labor and materials; and section 8875 [4] provides for a lien on the property of the association in the event the bond is not filed in accordance with the provisions of the preceding section. The first two of these sections received consideration in Hale v. Central Bank, 184 Ark. 829, 43 S.W.2d 530, where the trustees of an unincorporated church signed notes and a mortgage on its property to obtain money to construct a building for the church. The notes and mortgage were held valid. The personal liability of the trustees thereon was not raised. Similar statutes were considered in Wilson v. Clinton Chapel African Methodist Episcopal Zion Church, 138 Tenn. 398, 198 S.W. 244, where suit was brought on a note signed by trustees for the benefit of an unincorporated church organization. The suit was against the trustees. personally and as officers of the church. It was held that the statutes conferred a limited legal existence on unincorporated religious societies, that the trustees had authority to bind the church and that it was liable, but that Section 20 of the Negotiable Instruments Law relieved the trustees of personal liability.

It has been held in numerous cases that a trustee is subject to personal liability on a contract made by him in the course of the administration of the trust, in the absence of a statute to the contrary or a provision in the contract exempting personal liability. Taylor v. Davis (Taylor v. Mayo), 110 U.S. 330, 4 S.Ct. 147, 28 L.Ed. 163. That rule has been modified, insofar as negotiable instruments are concerned, by Section 20 of the Negotiable Instruments Law as elucidated by the elaborate opinion in the case of Hawthorne v. Austin Organ Company, 4 Cir., 71 F.2d 945. In that case suit was brought against a number of individuals who signed notes as trustees of a church to purchase an organ. The court held that one signing a negotiable instrument in such a manner as to manifest intention to be liable only as a trustee is not personally liable thereon if actually authorized to sign as trustee.

---

provements and appurtenances, in perpetual succession, in trust to such trustees as shall from time to time be elected or appointed by any such religious society according to the rules and regulations of such society."

[2] "§ 11369. Defense and prosecution of suits. The trustee or trustees for the time being of any religious society aforesaid shall have the same power to defend and prosecute suits at law or in equity, and do all other acts for the protection, improvement and preservation of said property, as individuals may do in relation to their individual property."

[3] "§ 8874. Churches—charitable institutions. Whenever any trustees, deacons, elders or vestrymen, or any committee of any religious organization or charitable institution or benevolent institution shall enter into a contract in any sum exceeding one hundred dollars, with any person or persons for the purpose of making any improvements or constructing any building or making repairs on same, on any church, hospital, orphanage or charitable institution or benevolent institution, such trustees, deacons, elders, vestrymen or committees shall take from the party contracted with a bond with good and sufficient sureties to the State of Arkansas, whose qualifications shall be verified and such sureties shall be approved by the clerk of the circuit court in the county in which the property is situated, said bond to be in the sum not less than double the total amount of the contract, and conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of such church, hospital, orphanage or charitable institution or in making improvements upon the same."

[4] "§ 8875. Bond to be filed. Such bond shall be filed in the office of the clerk of the circuit court in the county in which the property is situated, and any person to whom there is due any sum for labor or material furnished, or his assigns, may bring an action on said bond for the recovery of said indebtedness; provided, that no action shall be brought after six months from the completion of said church, hospital, orphanage, or charitable institution, or benevolent institution; provided further, that if said bond is not filed, as above provided, all persons performing labor or furnishing material, except the principal contractor shall have a lien upon said property for the unpaid amount of his claim."

An effort is made by appellant to place the decision in that case on the influence of the Virginia statutes governing the status of unincorporated associations, but we are of the opinion that the laws of Arkansas furnish even more substantial grounds for reaching the same conclusion.

In its conclusion in American Trust Company v. Canevin, 3 Cir., 184 F. 657, 663, where the same question was involved, the court said: "The negotiable instruments law has been enacted in a large number of our states. Its uniform construction is most desirable. We are not dealing now with the indorsement of an executor, or administrator, or testamentary trustee, who, ordinarily at least, has no power to bind his trust estate by a contract enforceable in a court of law, but with the indorsement of one who holds, in trust, the property of a religious society which, observing the rules and regulations of the society, he may sell or mortgage, or subject to liability for the payment of debts incurred by him in his representative capacity." A like conclusion was reached in the similar cases of Harter Bank v. Schrembs, 55 Ohio App. 116, 9 N.E.2d 154; First National Bank of Pennsboro v. Delancey, 109 W.Va. 136, 153 S.E. 908; Hunt v. Adams, 111 Fla. 164, 149 So. 24.

Attention has been directed to the case of Medlin v. Ebenezer Methodist Church, 132 S.C. 498, 129 S.E. 830, in which the court held that the officer of an unincorporated religious association who signed a note in its behalf, with authority, was personally liable. A number of distinctions might be made between that case and the one under consideration, but it is only necessary here to say that there is nothing in the opinion to indicate that the court considered Section 20 of the Negotiable Instruments Law.

The foreclosure proceeding was in Arkansas on realty in that state and the briefs are on the theory that the law of the state of Arkansas applies. We note that the deed of trust contained a provision that it and the notes shall be governed by the laws of the state of Missouri. Should the laws of Missouri be applied, the conclusion would be the same as the Negotiable Instruments Law is in force in that state, and it has been held that a trustee who signs a contract in his representative capacity is not personally liable.

Williams v. Schulte, Mo.App., 103 S.W.2d 543.

Under the laws of Arkansas an association of individuals constituting an unincorporated religious society has power to hold title to realty in the name of its trustees, to maintain and defend suits involving its property, to contract for church buildings and improvements, to incur indebtedness and to authorize its trustees to exercise such functions in its behalf; therefore, the church in this instance had the capacity to authorize the trustees to act, consequently, Section 20 of the Negotiable Instruments Law applies and appellee is not liable.

The judgment is affirmed.