Lloyd C. COLES, Ind., etc.

v.

HUMBLE OIL & REFINING COMPANY et al.

Civ. A. No. 71–C–93.

United States District Court,
S. D. Texas,
Corpus Christi Division.

July 5, 1972.

---

Robert E. Brunkenhoefer, Corpus Christi, Tex., for plaintiffs.

Robert D. McGee, Houston, Tex., for defendant Humble Oil & Refining Co.

Paul E. Harris, Houston, Tex., for defendant Standard Oil Co.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This suit, involving a claim for personal injury damages resulting from an automobile collision in Nueces County, Texas, was originally filed by Plaintiffs against Humble Oil & Refining Company, a Delaware corporation, on May 20, 1971. In answer, Humble filed its motion to be dismissed from this suit because of lack of jurisdiction, contending that it was a Delaware corporation with its principal place of business in Houston, Texas, and since both Plaintiff and Defendant were citizens of Texas under 28 U.S.C. § 1332, there is no diversity.

By their first amended complaint, filed on July 9, 1971, the Plaintiffs also sued Standard Oil Company of New Jersey, a New Jersey corporation, as a party Defendant, and by such pleading alleged Standard completely and absolutely controlled Humble's policy decisions and operations. Standard has its principal place of business in New York City, New York. Subsequently, the Plaintiffs, on July 19, 1971, filed a demand that Humble produce various instruments under Rule 34, and answer interrogatories. Humble objected to such requests.

On August 18, 1971, Standard Oil Company (although sued as Standard Oil Company of New Jersey) filed its motion to be dismissed from this suit, contending there was (a) lack of personal jurisdiction; (b) insufficient service of process; (c) lack of subject matter jurisdiction; and (d) failure to state a claim against Standard.

Thereafter, on December 9, 1971, Plaintiffs filed a second amended complaint in which they insisted that Standard, obviously not a citizen of Texas, was the alter ego of Humble, under the "nerve center" test, and thus was the true Defendant; and, in addition, alleged that, under the "place of operations" test, Humble was neither a citizen of Texas nor did it have its principal place of business in this state, but its principal place of business was at the offices of Standard in New York. Plaintiffs' claim of diversity is based upon such contentions.

On the same date, a memorandum and order was signed by the Court, stating that, "The principal place of business of Humble is the jurisdictional issue pres-

ently in dispute," and further stating that it "must first ascertain the degree of discovery necessary to resolve the jurisdictional question of Humble's principal place of business, and, then, secondly, determine the discovery necessary to ascertain whether the corporate veil of Humble should be pierced." The Court ordered the Humble Company to answer certain of the interrogatories previously submitted by Plaintiffs, and, on its own motion, the Court asked that both Defendants furnish evidence to indicate whether Humble is a solvent corporation against which the Plaintiffs would have an adequate and practical remedy.

The discovery is now complete and the Court has received the information it, on its own motion, requested. The question of whether or not there is diversity is now before the Court and ripe for decision. The Court has carefully reviewed all of the information accumulated through discovery methods and the affidavits on file herein. The Court, based upon the information it requested, finds that Defendant Humble is a solvent, on-going business concern, with executive offices in Houston, Texas; and, whether sued in this Federal court or in a state court of Texas, it is financially able to pay any judgment that Plaintiffs might obtain against it.

But, regardless of Humble's ability to pay any judgment Plaintiffs might recover against it, we need to resolve the status of Standard Oil Company. On its face, the record is devoid of any information which even indicates that Standard, admittedly a New Jersey corporation, was, at the time of the alleged collision, authorized to do business or that it was, in fact, actually doing business in Texas. There is no evidence that it has offices or employees working in this state. Walter Loflin, acknowledged by Plaintiffs to be "an employee of Defendant, Humble Oil and Refining Company," was certainly not working for Standard when the collision occurred. Under this set of facts, Standard's motion to dismiss this suit against it ought

to be granted, on the jurisdictional grounds stated.

However, there is more to the story. We now must take a look at Humble Oil and Refining Company's corporate structure. It is undisputed that Humble is a Delaware corporation, authorized to do business in Texas, and it was served in Houston, Texas. It owns an office building in Houston valued at more than Thirty-four Million Dollars ($34,000,-000), which houses its executive offices and over 3,200 employees. The operations of Humble are directed by its Board of Directors, which meets in Houston, and by its officers, most of whom live there; and, none of whom are employed by Standard. Humble's production activities are divided among geographical divisions and directed from the Houston office. There are five divisions: East Texas, with headquarters in Houston; South Texas, in Corpus Christi, Texas; Mid-Continent, in Midland, Texas, which includes West Texas and North Texas, along with the middle western and northeastern states; Western Division, which includes California and Alaska; and Southeastern Division, which includes Louisiana through Florida. The nationwide operations of Humble have resulted from the merging with the Carter Oil Company, Esso Standard Oil Company, Oklahoma Oil Company, Pate Oil Company, and perhaps others. The shares of these corporations were owned by Standard at the time of the mergers, but that has no significance as to the question we need to resolve.

■ The production in Texas was well over 50% of the total dollar volume of production during the first three quarters in 1971, and the percentage is approximately the same as to barrels of crude oil, plant liquids and natural gas. Approximately one-third of all the oil refined is processed through the Baytown, Texas, refinery. The consolidated financial statement of Humble Oil & Refining Company, prepared for its Board of Directors by the Houston, Texas, office of Price Waterhouse & Co., shows

Humble and its subsidiaries to be a separate financial unit, adequately financed and a highly successful operation, with total assets of tremendous value and a net income in 1971 of over Seven Hundred Million Dollars ($700,000,000). There is over Three Million Dollars ($3,000,000) worth of equipment in the Houston headquarters which is available to all production divisions. Under the foregoing factual information regarding Humble, whether the so-called "nerve center" test or the "operation center" test is applied, it makes no difference. The place of business is in the City of Houston, State of Texas, and Humble is, therefore a citizen of Texas for the purposes of 28 U.S.C. § 1332(c). Kelly v. United States Steel Corporation, 284 F. 2d 850 (3 Cir. 1960).

In view of what has already been said, it is apparent the only way Plaintiffs can stay in Federal court is for them to have established that Humble is really only an arm of Standard Oil Company; that Humble employees are, in fact, employees of Standard; and that Standard is the real Defendant. If the facts before this Court support the burden Plaintiffs have, then, so far as this suit is concerned, Humble is merely another name under which Standard does, in fact, do business in Texas; Walter Loflin, the driver of the Defendant's car, was really an agent of Standard, and Standard, not Humble, would be the real Defendant, and, being a citizen of New York, there would be diversity jurisdiction. We do not believe such conclusions are valid. They are not supported by the evidence.

There is no question that Standard Oil Company owns all of the shares of Humble, but this alone does not create an alter-ego situation. There have been no Standard operations merged into Humble. The relationship of Standard with Humble is to give advice and guidance on the policy level and has nothing to do with the day-to-day operations of Humble. Granted that the Board of Directors, board committees and officers do perform certain functions relating to Humble. In addition to the execution of proxies authorizing one or more senior executives of Humble to vote Standards' shares of Humble stock for the election of directors and upon other matters requiring stockholder action, they admittedly (1) review Humble's business plans and performance, proposed capital investment budgets and major additions thereto; (2) give such financial advice and services as may be requested by Humble; and (3) whenever Humble seeks guidance or advice on major policy matters, and as to operating and administrative matters, to consult with its officials. These activities are not sufficient to put Standard in business in Texas. Lurie Company v. Loew's San Francisco Hotel Corp., 315 F.Supp. 405 (D.C.1970). Such activity does not come close to that kind of control which established an agency relationship in Frazier et al. v. Alabama Motor Club, Inc., 349 F.2d 456 (5 Cir.)

Although Humble is solely owned by Standard Oil Company, whose officials keep close tab on what is going on, there are no facts in the record which even imply any attempt on the part of Standard to defeat the public convenience or to justify any wrong or to avoid any liability by using Humble as a protective shell. The situation does not justify this Court in disregarding the corporate entity of Humble. State v. Swift & Co., 187 S.W.2d 127 (1945), writ ref.; Turner v. Jack Tar Grand Bahama, Ltd., 353 F.2d 954 (5 Cir., 1965).

Since Plaintiffs are citizens of Texas and the Defendant Humble Oil & Refining Company is also a citizen of Texas, and since Defendant Standard Oil Company has not been legally served with summons in this case, and, in any event, is not a proper party, this Court is without diversity jurisdiction and this cause should be dismissed.