**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David E. Van DIVINER,
Defendant-Appellant.**

**No. 86–2224.**

United States Court of Appeals,
Tenth Circuit.

July 7, 1987.

Paul Hunter, Cheyenne, Wyo., for defendant-appellant.

Richard A. Stacy, U.S. Atty., and Toshiro Suyematsu, Asst. U.S. Atty., District of Wyoming, Cheyenne, Wyo., for plaintiff-appellee.

Before LOGAN and TACHA, Circuit Judges, and O'CONNOR, District Judge.[*]

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8(c) and 27.1.-2. The cause is therefore ordered submitted without oral argument.

Defendant David E. Van Diviner appeals from a judgment holding him personally liable in damages for breach of a custodial maintenance contract between a corpora-

tion he owned and the United States. The United States sued the corporation, Trail Bronc, Inc., and Van Diviner and Harold E. Lipsmeyer "as Surviving Officers" of the corporation, for breach of a contract under which Trail Bronc, Inc. agreed to provide janitorial services at Warren Air Force Base in Wyoming. After a bench trial, the district court entered judgment against all defendants, finding them jointly and severally liable, and dismissed the defendants' counterclaim with prejudice. The trial court subsequently amended its judgment by dismissing Lipsmeyer. Van Diviner filed a timely notice of appeal from the amended judgment.

We are unable to determine from the record what theory the government asserted or the district court relied on as the basis for holding Van Diviner personally liable. There is no pretrial order in the record. The complaint describes Van Diviner as a "Surviving Officer[ ] of Trail Bronc, Inc.," and merely alleges that "defendants" entered into and breached the janitorial services contract.[1] At trial, Van Diviner testified that he had been president of Trail Bronc, Inc. "up until the time that the corporation was terminated." R. II, 40.

The district court imposed joint and several liability without distinguishing between the individual and corporate defendants in its findings of fact and conclusions of law. Defendants' counsel was the first and only person to mention piercing the corporate veil when in his closing argument he asserted there was no evidence justifying judgment against Van Diviner and Lipsmeyer.

On appeal Van Diviner argues that the complaint and the evidence at trial were insufficient to justify imposing personal liability on him either as a party to the contract or by piercing the corporate veil. The government contends that the evidence was

[*] Honorable Earl E. O'Connor, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

1. The answer is in the form of a general denial on behalf of all defendants. A counterclaim was filed on behalf of all defendants but refers to the corporation as the contracting party and appears to seek relief on behalf of the corporation only. It confusingly uses "defendants" in its prayer, but the attorney signs as "Defendant's attorney." In these circumstances we will not treat Van Diviner's failure to specifically plead limited liability as a waiver of that defense.

sufficient and, in the alternative, that Van Diviner should be held liable under the trust fund doctrine.

## I

A threshold question is whether state or federal law should be applied. When the United States litigates or seeks a remedy arising from commercial transactions into which it has entered, federal interests are sufficiently implicated that federal common law defines the rights and liabilities of the parties. *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943); *Ashland Oil, Inc. v. Phillips Petroleum Co.,* 554 F.2d 381, 390–91 (10th Cir.1975), *cert. denied,* 434 U.S. 921, 968, 98 S.Ct. 396, 513, 54 L.Ed.2d 278, 456 (1977). In the absence of an established federal rule, we may apply state doctrines not inconsistent with an applicable federal statute as the federal rule of decision. *Ashland Oil,* 554 F.2d at 391; *see also United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979).

Ordinarily, a corporation is regarded as a separate entity distinct from the individuals comprising it. *Moline Properties v. Commissioner,* 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499 (1943); *Opal Mercantile v. Tamblyn,* 616 P.2d 776, 778 (Wyo.1980). Personal liability for a corporation's debts cannot be imposed on an individual merely because he is an officer or shareholder of that corporation.[2] *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 753 (7th Cir.1985); *McCoy v. Stroud & Co.,* 373 F.2d 862, 865 (3d Cir. 1967). In this action, the contract, on its face, recites an obligation on the part of Trail Bronc, Inc. and is signed in the name of Trail Bronc, Inc. by Van Diviner. Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract. *McCoy,* 373 F.2d at 865; *Colonial Securities, Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 461 F.Supp. 1159, 1165 (S.D.N.Y. 1978); *ITT Industrial Credit Co. v. LP Gas Equipment, Inc.,* 453 F.Supp. 671, 675–76 (W.D.Okla.1978); *Kure v. Chevrolet Motor Div.,* 581 P.2d 603, 609 (Wyo. 1978).

The only evidence here that might possibly be construed to hold Van Diviner individually liable on the contract is not strong. Van Diviner signed the contract documents as "owner" of Trail Bronc, Inc. He later wrote several letters to the base contracting and procurement officers under the letterhead "Trail Bronc Janitorial Service." Most of these letters were signed:

Trail Bronc Inc.

/s/ [illegible]

David Van Diviner

One was signed:

/s/ [illegible]

David Van Diviner

Owner

Although this evidence might otherwise be enough to raise a fact question whether Van Diviner signed the contract at issue as officer of the corporation or, possibly, as owner of a sole proprietorship,[3] the government admitted that "at the time the contract was signed, the United States thought that it was dealing with a properly functioning corporate entity." Brief of Appellee at 25. Neither of the government's

---

2. The record indicates that Trail Bronc, Inc. may have been dissolved in November 1984. R. II, 57. Under Wyoming law, however, a dissolved corporation retains the capacity to be sued as an entity until two years after the date of dissolution. Wyo.Stat.Ann. § 17–1–622 (Supp.1986). The government filed its complaint in March 1986, in time to take advantage of its remedy against Trail Bronc, Inc. *See* Fed.R.Civ.P. 17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.").

3. *See First National Bank v. Murphy,* 441 S.W.2d 661 (Tex.Civ.App.1969) (use of the word "owner" below corporate president's signature on a promissory note created jury question whether parties intended president to be personally bound); *S. Davis, Inc. v. McGuckin,* 51 Misc.2d 1071, 274 N.Y.S.2d 1007 (City Ct. Albany 1966) (use of letterhead indicating that defendant's business was a sole proprietorship precluded the defense that his corporation was the proper party defendant).

witnesses testified that he believed he was contracting with anyone other than Trail Bronc, Inc., *see* R. II, 13, 16; *but cf.* R. II, 33 (describing another service contract as having been "awarded to Mr. Van Diviner"), and the district court made no findings in this regard. Accordingly, the judgment below cannot be sustained on a theory that Van Diviner was an individual party to the contract. *Cf. Northern Propane Gas Co. v. Cole*, 395 F.2d 1, 3–4 (5th Cir. 1968) (no material factual issue whether corporate president intended to bind himself in his individual capacity).

## II

The government's principal argument on appeal is that Van Diviner's disregard of corporate formalities would have justified the district court in disregarding the corporate veil of Trail Bronc, Inc. Van Diviner argues in response that the complaint is devoid of any reference to any factor justifying piercing the corporate veil, precluding the government from relying on that theory to support the judgment below. *See Publicker Industries v. Roman Ceramics*, 603 F.2d 1065, 1069–70 (3d Cir.1979) (plaintiff failed to allege fraud, illegality or injustice by means of corporation's separate existence, and thus district court could not have disregarded the corporate form under an "alter ego" theory); *Hokama v. E.F. Hutton & Co.*, 566 F.Supp. 636, 647 (C.D. Cal.1983) ("[c]onclusory allegations of alter ego status" insufficient to withstand motion to dismiss complaint); *United States v. A and C Investments, Inc.*, 513 F.Supp. 589, 591 (N.D.Ill.1981) (dismissing complaint against individuals which was devoid of reference to any claim for piercing the corporate veil).

■ Van Diviner did not challenge the sufficiency of the complaint in the district court,[4] however, nor did he object to any of the government's evidence as beyond the scope of the pleadings. Rule 15(b) of the Federal Rules of Civil Procedure permits issues not raised by the pleadings to be tried by the express or implied consent of the parties. Implied consent may be found when "the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 457 (10th Cir.1982). The determination whether an issue has been tried by implied consent is within the sound discretion of the trial court. *Id.* at 457.

At the same time, we note that the government never mentioned the theory of piercing the corporate veil in its opening or closing arguments. The evidence the government relies on to support its theory on appeal was introduced in the context of litigating the contract issues raised in the pleadings. "Implied consent may not be inferred merely because evidence relevant to a properly pleaded issue incidentally tends to prove a fact not within the pleadings." *Ellis v. Arkansas Louisiana Gas Co.*, 609 F.2d 436, 440 (10th Cir.1979), *cert. denied*, 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 239 (1980).

Because of the procedural double default and because the judgment of the district court did in effect pierce the corporate veil by imposing personal liability upon Van Diviner, we will discuss the issue.

■ Under federal common law, "the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy." *Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.*, 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974); *see also Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir.1981) ("a corporate entity may be disregarded in the interests of public convenience, fairness and equity"). Although actual fraud is not generally regarded as a prerequisite for piercing the corporate veil, *see Cunningham v. Rendezous, Inc.*, 699 F.2d 676, 680

---

4. We will not consider purported defects in the pleadings that were not raised in the trial court. *SEC v. Dennett*, 429 F.2d 1303, 1304 (10th Cir. 1970); *see also Jordan v. Kelly*, 728 F.2d 1, 4 (1st Cir.1984). The defendants' answer stated, as an affirmative defense, that the complaint failed to state a cause of action on which relief could be granted; but this issue apparently was never argued. *See* R. II, 107 ("I would guess it's too late to do a Motion to Dismiss").

(4th Cir.1983), the plaintiff bears the burden of demonstrating that some injustice or inequity will result from recognition of the corporate entity. *Id.* at 680; *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 764 (9th Cir.1981); *Capital Telephone Co. v. FCC,* 498 F.2d 734, 738 (D.C.Cir.1974). In balancing the equities, considerable weight is attached to the respect given the corporate form by the corporation's officers and shareholders.

 A variety of factors are to be considered in this regard, including the following: (1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses. *See Labadie Coal Co. v. Black,* 672 F.2d 92, 97–99 (D.C. Cir.1982); *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Hroch,* 757 F.2d 184, 190 (8th Cir. 1985); *Kloefkorn-Ballard Construction and Development, Inc. v. North Big Horn Hospital District,* 683 P.2d 656, 661 (Wyo. 1984).

Upon review of the record, we are convinced that the evidence is not sufficient to support the district court's judgment against Van Diviner on the theory that the corporate form should be disregarded. In addition to Van Diviner's signature on the contract documents as "owner" of Trail Bronc, Inc. and his use of a letterhead that did not specifically identify the business as a corporation, the only evidence that might justify piercing the corporate veil was that Van Diviner received certified mail addressed to Trail Bronc, Inc. by placing his signature in the box marked "Signature-

Addressee" rather than the box marked "Signature-Agent." Also, in his testimony, Van Diviner frequently used the pronouns "I" or "we" when referring to matters affecting Trail Bronc, Inc.[5] While this evidence indicates that Van Diviner did not always scrupulously maintain the distinction between himself and the corporation, there is no evidence that he commingled the corporation's funds with his own, distributed to himself corporate assets, misled the government or anyone, or otherwise misused or abused the corporate form in a way that would threaten injustice to the government. *Cf. Hroch,* 757 F.2d at 191 & n. 9 (imposing liability for trust fund contributions on dissolved corporation's president who admitted that corporation was "just a tax gimmick" and "was always my business anyway"). Thus, the district court would not have been justified in piercing the corporate veil of Trail Bronc, Inc. to impose personal liability against Van Diviner.

## IV

The government's argument that Van Diviner should be held liable under the trust fund doctrine is without merit. Under the trust fund doctrine, the assets of an insolvent or dissolved corporation constitute a trust fund for the benefit of creditors, and an equitable action may be brought against a stockholder or distributee when the assets of the dissolved or insolvent corporation are distributed without affording an opportunity for creditors to present and enforce claims. *See, e.g., Stone v. First Wyoming Bank N.A., Lusk,* 625 F.2d 332, 348–49 (10th Cir.1980). In this case, there is no evidence that Van Diviner received any of Trail Bronc, Inc.'s assets in preference to its creditors.

Accordingly, the judgment of the United States District Court for the District of Wyoming against David E. Van Diviner is REVERSED.

---

5. The government also contends that Trail Bronc, Inc.'s dissolution is evidence of undercapitalization. We disagree. The record simply does not permit us to determine what may have contributed to the corporation's demise.